NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNETTE LA ROSA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | Civil Action No.: 21-891<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

Before the Court is the appeal of Annette La Rosa ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA" or the "Act"). This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.    BACKGROUND**

Plaintiff is currently a 58-year-old female with a high school level of education. Tr.[1] at 21. She was last employed in approximately 2015, when she worked as an assistant in a dental office. *Id.* at 38. Before that, she served as a "court clerk" in Arlington, New Jersey. *Id.* at 64 Plaintiff currently lives on the upper level of a two-family home, and her older sister lives on the home's first floor. *Id.* at 48.

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 5.

Plaintiff testified that she suffers from anxiety, social anxiety, and panic attacks. *Id.* at 18. She has also been diagnosed with bipolar disorder and generalized anxiety disorder. *Id.* at 19. Due to her conditions, Plaintiff does not bathe or groom regularly, has trouble keeping appointments, and has conflicts with her family. *Id.* at 18. Nevertheless, Plaintiff can make simple meals, sorts her mail, and keeps her kitchen and bathroom "spotless." *Id.* Moreover, despite having arguments with her relatives, Plaintiff reported that she is able to make amends with them. *Id.* at 56–57. To treat her conditions, Plaintiff saw a social worker once every two weeks, and attended medication management appointments once every six months. *Id.* at 18. She also has taken antipsychotic mediation since 2016, which helps manage her impairments and creates no side effects for her. *Id.*

On August 10, 2018, Plaintiff filed an application for DIB, alleging disability beginning on June 1, 2018 due to bipolar disorder, depression, anxiety, panic disorder, personality disorder, spinal stenosis, herniated nucleus pulposus, anterolisthesis, seizure disorder, and fatigue. *Id.* at 12, 240. After filing her DIB application, Plaintiff withdrew any allegations that she was disabled due to any physical health problems. *Id.* at 31–32. Plaintiff's claim for DIB was denied initially on January 10, 2018, and upon reconsideration on March 27, 2019. *Id.* at 12. Plaintiff requested and was granted a hearing before an ALJ held in May 2019, at which Plaintiff and an impartial vocational expert testified. *Id.*

On June 4, 2020, the ALJ determined that Plaintiff was not disabled at any time from June 1, 2018, the alleged onset date, through June 30, 2018, the date last insured, and denied her request for benefits. *Id.* at 22. Thereafter, on November 16, 2020, the Social Security Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. This appeal followed. ECF No. 1.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

#### B. Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

3

lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if her physical or mental impairments are "of such severity that [she] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C.    Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work. *Id.* Third, if she has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part

404, Subpart P, Appendix 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform. *Id.*

The evaluation continues through each step unless it is ascertained at any point the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The claimant bears the ultimate burden of establishing steps one through four. *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy. *Id.* at 555.

## IV.   DISCUSSION

### A.   Summary of the ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from June 1, 2018, the alleged onset date, through June 30, 2018, her date last insured. Tr. at 15. At step two, the ALJ found Plaintiff had the following severe impairments: bipolar disorder and generalized anxiety disorder. *Id.* At this step, the ALJ also noted that Plaintiff was treated for hypertension, and that she is obese. *Id.* However, the ALJ determined that these were non-severe impairments, as "there is no evidence in the record that [hypertension and obesity] have caused a more than minimal effect on the claimant's ability to do work-related activities." *Id.* Moreover, the ALJ noted that while the record discusses Plaintiff's symptoms for post-traumatic stress disorder ("PTSD"), agoraphobia, insomnia, and panic disorder, the ALJ concluded these

5

were not medically determinable impairments, and thus, were not severe impairments pursuant to the step two requirements. *Id.* at 15–16. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings. *Id.* at 16–17. Because the ALJ found that Plaintiff's impairments did not equal an impairment enumerated in the Listings, the ALJ then formulated Plaintiff's RFC. *Id.* at 17–20. Based on all the evidence in the record, the ALJ found that during the relevant period, Plaintiff had the RFC to perform a "full range of work at all exertional levels" with some limitations, including being limited to simple routine tasks, interactions with only supervisors and co-workers, and no more than occasional changes in work setting. *Id.* at 17. At step four, the ALJ determined Plaintiff could no longer perform her past relevant work as an office manager and dental receptionist because these semi-skilled jobs exceeded her ability to perform simple, routine tasks. *Id.* at 20. At step five, based on Plaintiff's background, work experience, RFC, and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform a significant number of unskilled jobs existing in the national economy. *Id.* at 21–22. Accordingly, the ALJ found Plaintiff not disabled and denied Plaintiff's application for DIB. *Id.*

    **B.**    **Plaintiff's Arguments on Appeal**

In the instant appeal, Plaintiff asserts that the ALJ erred at step two by failing to adequately explain his conclusions that obesity and hypertension were non-severe impairments, and that PTSD, agoraphobia, insomnia, and panic disorder were not medically determinable impairments. ECF No. 11 at 8–26. Plaintiff further argues that the ALJ compounded his step two error by failing to discuss these impairments at steps three and four of Plaintiff's sequential analysis. *Id.* Second, Plaintiff asserts that the ALJ improperly applied the treating source rule when he found the opinion of Plaintiff's treating psychologist, Dr. Kenneth McNeil ("Dr. McNeil"), to be unpersuasive. *Id.* at

26–39.

### 1.     Findings Regarding Severity of Plaintiff's Impairments

Beginning with Plaintiff's assertion that the ALJ incorrectly determined Plaintiff's hypertension and obesity were not severe and her PTSD, agoraphobia, insomnia, and panic disorder were not medically determinable impairments at step two, "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). An impairment (or combination of impairments) will not be severe if the evidence establishes a "slight abnormality" with "no more than a minimal effect on an individual's ability to work." SSR 85-28. "Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits [at step two] without undertaking the vocational analysis." *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987) (O'Connor, J., concurring); *see also* 20 C.F.R. §§ 4140.1520(c), 404.1522, 416.920(c), 416.922. If a claimant presents evidence of more than a slight abnormality, "the step two requirement of 'severe' is met, and the sequential evaluation process should continue." *Newell*, 347 F.3d at 546. Moreover, once step two is found in a plaintiff's favor, the ALJ should consider all impairments, whether they were determined to be severe or not, at all subsequent steps of the evaluation. *Fatima S. v. Comm'r of Soc. Sec.*, No. 20-cv-7094, 2022 WL 909674, at *8 (D.N.J. Mar. 29, 2022) (citations omitted).

In determining Plaintiff's severe impairments at step two, the ALJ recognized that Plaintiff is "treated with medication for hypertension, and that she is obese," but explicitly found that "there is no evidence in the record that these cause more than a minimal effect on the claimant's ability to do work-related activities." Tr. at 15. Thus, the ALJ determined that Plaintiff's hypertension and obesity were non-severe. *Id.* As the ALJ stated he considered the entire record, in reaching this conclusion, the ALJ's finding is supported by substantial evidence. Tr. at 15; *see Fatima S.*,

7

2022 WL 909674, at *7 (finding an ALJ's conclusion that an impairment had no more than a minimal effect on a plaintiff's ability to perform basic work activities sufficient to support a step two finding). In any event, the ALJ still found in Plaintiff's favor at step two by determining that Plaintiff had severe impairments for bipolar disorder and generalized anxiety disorder, and appropriately proceeded with Plaintiff's sequential analysis. Tr. at 15; *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (stating that an ALJ's step two analysis is sufficient where, in finding for Plaintiff, the ALJ determines that at least one of Plaintiff's impairments is severe).

Plaintiff further argues that the ALJ also failed to adequately consider obesity at each subsequent step of the sequential evaluation. ECF No. 11 at 15–23. The Third Circuit Court of Appeals has held that "an ALJ must meaningfully consider the effect of a [plaintiff's] obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009). In assessing the impact of a plaintiff's obesity, the ALJ must discuss the evidence and explain his reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.* Moreover, a plaintiff must establish not just that "obesity can impair one's ability to perform basic work activities," but must also "specify[] how her obesity . . . affects her ability to perform basic work activities." *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020).

Here, the ALJ explicitly considered Plaintiff's obesity in fashioning Plaintiff's RFC at steps three and four. Specifically, the ALJ noted that Plaintiff's obesity was not severe, and then stated that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functional capacity." Tr. at 15. In addition, Plaintiff has identified no specific medical evidence in the record demonstrating that obesity

8

impacted her ability to perform work-related activities or necessitated additional functional limitations beyond those already accounted for in the RFC. Indeed, at her administrative hearing, Plaintiff testified that she was "not alleging any physical impairments prior to [her] date last insured." Tr. at 31–32; *see also id.* at 13 ("[T]he [Plaintiff] is not claiming any physical-related impairments."); *id.* at 247 (noting that Plaintiff "withdrew allegations of physically disabling conditions and requested a determination based on mental conditions only"). Accordingly, based on the record, the ALJ sufficiently considered Plaintiff's obesity at steps three and four. *See Padilla v. Comm'r of Soc. Sec.*, No. 14-cv-007, 2015 WL 1006262, at *7 (D.N.J. Mar. 6, 2015) (finding ALJ's conclusion regarding obesity sufficient where plaintiff did not claim obesity as an impairment and where the record offered no evidence in treatment notes about the condition); *Santini v. Comm'r of Soc. Sec.*, No. 08-cv-5348, 2009 WL 3380319, at *6 (D.N.J. Oct. 15, 2009), *aff'd*, 413 F. App'x 517 (3d Cir. 2011) (affirming ALJ's finding regarding obesity where plaintiff "has pointed to no medical evidence of record that her obesity has caused a substantial or relevant work-related limitation of her function") (emphasis omitted).

In addition, Plaintiff argues that the ALJ erred by concluding at step two that Plaintiff's symptoms for PTSD, insomnia, agoraphobia, and panic disorder were not medically determinable impairments, and committed further error by failing to address these impairments at subsequent steps of the sequential evaluation. ECF No. 11 at 26–39. However, this argument is unavailing. Plaintiff's assertion amounts to a disagreement with the ALJ's conclusions regarding which of Plaintiff's conditions constituted a medically determinable impairment. Such disagreement does not constitute grounds to set aside an ALJ's decision. *See Cruz*, 244 F. App'x at 479 (finding that an ALJ's decision may not be set aside merely because the Court disagrees with the ALJ's conclusion) (citation omitted). Nevertheless, the ALJ still considered Plaintiff's PTSD,

agoraphobia, insomnia, and panic disorder in the rest of his analysis by considering the examination notes of Dr. McNeil, Plaintiff's psychologist. Tr. at 16–20; *see Refine v. Comm'r of Soc. Sec.*, No. 19-cv-14215, 2020 WL 3073829, at *4 (D.N.J. Jun. 10, 2020) (finding that irrespective of the findings at step two, an ALJ's decision is sufficient where he properly considers Plaintiff's impairments in the overall RFC assessment). Specifically, the ALJ addressed Dr. McNeil's treatment notes from his examinations of Plaintiff conducted in June and December 2018. Tr. at 16–20 (citing B1F, B4F, B5F). In those treatment notes, Dr. McNeil found that, among other things, Plaintiff suffered from agoraphobia, sleep disturbance, and panic attacks, as well as exhibited symptoms associated with PTSD. Tr. at 346–348. Indeed, the ALJ explicitly noted these findings and stated that Plaintiff experienced panic attacks, anxiety, agoraphobia, and sleep disturbance. *Id.* at 19. He also addressed conditions, including low-self-esteem, concentration issues, sleep disturbance, and exaggerated startle response, which Dr. McNeil identified as symptomatic of PTSD. *Id.* at 19, 347, 348. Accordingly, the ALJ adequately considered Plaintiff's impairments related to PTSD, agoraphobia, insomnia, and panic disorder in conducting Plaintiff's sequential evaluation. *Jay R. v. Comm'r of Soc. Sec.*, No. 20-cv-10159, 2021 WL 6125800, at *5 (D.N.J. Dec. 28, 2021) (finding that an ALJ properly considered non-severe impairments by discussing the treatment notes addressing the non-severe impairments at issue).

### 2. Weighing Dr. McNeil's Opinion

Next, Plaintiff argues that the ALJ erred by finding the opinion of Dr. McNeil, Plaintiff's treating psychologist, unpersuasive, and by not affording it controlling weight. ECF No. 11 at 26–39.

When analyzing a medical opinion, the SSA regulations[2] provide a framework for the ALJ to determine the persuasiveness of that opinion based on the following factors: (1) supportability (*i.e.*, whether the medical opinion is supported by objective medical evidence); (2) consistency (*i.e.*, whether the medical opinion is consistent with other medical and nonmedical sources in the record); (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c); *see also David K.*, No. 20-12419, 2022 WL 225451, at *6 (D.N.J. Jan. 26, 2022). When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.[3] *Id.* §§ 404.1520c(a), 416.920c(a). The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* §§ 404.1520c(b), 416.920c(b). Specifically, the ALJ must explain how he considered the "supportability" and "consistency"

---

[2] In her brief, Plaintiff cites to caselaw that applies the "treating physician rule," Pl. Br. at 17, which required the ALJ to give controlling weight to a treating source's opinion, so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). However, the regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017); *see also David K. v. Kijakazi*, No. 20-12419, 2022 WL 225451, at *6 (D.N.J. Jan. 26, 2022). Because Plaintiff's claim was filed on August 10, 2018, the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply.

[3] With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

factors for a medical source's opinion. *Id.* The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Here, the ALJ found Dr. McNeil's opinion unpersuasive. Tr. at 20. First addressing supportability, the ALJ determined that Dr. McNeil supported his opinion with narrative reporting, and primarily discussed self-reported information from Plaintiff and her sister, rather than relying on objective medical or clinical testing. *Id.*; *see Statkiewicz v. Kijakazi*, No. 21-cv-4316, 2022 WL 807421, at *10 (D.N.J. Mar. 16, 2022) (finding an ALJ's conclusion that a physician's opinion lacked support where the opinion was largely based on self-reporting). Regarding consistency, the ALJ determined that Dr. McNeil's findings in June 2018 that Plaintiff experienced marked limitations in concentrating, persisting, or maintaining pace and extreme limitations in interacting with others and adapting or managing oneself are inconsistent with Dr. McNeil's findings from a December 2018 examination. At this December 2018 exam, Dr. McNeil found that Plaintiff could perform serial sevens fairly well, recall three out of three words, spell forward and backward, and track conversation with some refocusing. Tr. at 20. Moreover, the ALJ found that these December 2018 results were more consistent with the treatment notes of Dr. Lee Hindin, a psychiatrist, who, the ALJ noted, determined that Plaintiff had normal speech, an anxious mood, intact cognition, unremarkable judgment, concentration, and good insight. *Id.* Thus, the ALJ properly considered the persuasiveness of Dr. McNeil's opinion in accordance with the applicable regulations. *See* C.F.R. § 404.1520(c)(1)–(2); *see also Costello v. Comm'r of Soc. Sec.*, No. 20-15540, 2022 WL 807382, at *5 (D.N.J. Mar. 17, 2022).

## V. <u>CONCLUSION</u>

For the reasons above, the ALJ's decision is affirmed. An appropriate Order will follow.

**DATE:** July 6th, 2022

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**
